T.C. Memo. 2004-190


UNITED STATES TAX COURT


MAUREEN MONSOUR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18147-02.                    Filed August 25, 2004.


<u>Steven L. Sablowsky</u>, for petitioner.

<u>Russell F. Kurdys</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  This case arises from (1) a request for relief under section 6015(b)[1] and, in the alternative, under section 6015(f) with respect to each of petitioner's taxable

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

years 1989, 1991, 1992, and 1993 and (2) a request for relief under section 6015(f) with respect to petitioner's taxable year 1990.

The issues for decision are:

(1) Is petitioner entitled to relief under section 6015(b) with respect to each of the taxable years 1989, 1991, 1992, and 1993? We hold that petitioner is not entitled to such relief.

(2) Did respondent abuse respondent's discretion in denying petitioner relief under section 6015(f) with respect to each of the taxable years 1989, 1990, 1991, 1992, and 1993? We hold that respondent did not abuse respondent's discretion.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time petitioner filed the petition, she resided in Jeanette, Pennsylvania.

Petitioner received three degrees from the University of Pittsburgh: (1) An undergraduate nursing degree in 1976; (2) a graduate nursing degree in 1980; and (3) a law degree in 1990.

From 1976 until 1990, petitioner worked at Monsour Medical Center, initially as a registered nurse in the critical care unit and thereafter as the director of nursing.

In 1991, petitioner was admitted to practice law in Pennsylvania and began to do so as a sole practitioner focusing on family law and the respective laws relating to personal injury

claims and Social Security claims for disability. In 1992, petitioner was admitted to practice law in Florida, although she limited her law practice almost exclusively to Pennsylvania.

On July 3, 1983, petitioner, who was approximately 29 years old, married William J. Monsour (Mr. Monsour), who was approximately 55 years old. At that time, Mr. Monsour was a successful physician specializing in internal medicine at Monsour Medical Center as well as a successful investor who, either alone or with other persons excluding petitioner, had invested in various assets. (We shall refer to the assets in which Mr. Monsour, either alone or with others excluding petitioner, had invested as Mr. Monsour's assets or Mr. Monsour's investments.)

Throughout the taxable years at issue, at least certain household bills relating to the residence of petitioner and Mr. Monsour were sent to Mr. Monsour's office. Mr. Monsour took any such bills to that residence, where petitioner reviewed them, prepared checks to pay them, asked Mr. Monsour to sign those checks, and mailed those signed checks to the payees. At all relevant times, Mr. Monsour also signed checks with respect to Mr. Monsour's investments as well as checks with respect to the joint investments of petitioner and Mr. Monsour. Petitioner reviewed those signed checks and mailed them to the payees.

Before their marriage, petitioner and Mr. Monsour entered into a prenuptial agreement (prenuptial agreement), which listed

all of Mr. Monsour's assets. That agreement provided that petitioner was to receive (1) 10 percent of Mr. Monsour's assets in the event that she and he were to divorce prior to a stated time not disclosed by the record and (2) a percentage of Mr. Monsour's assets not disclosed by the record in excess of 10 percent if she and he were to remain married after such stated time and were to have children. Petitioner and Mr. Monsour had three children for whose care she was principally responsible during the taxable years at issue.

Mr. Monsour's assets listed in the prenuptial agreement and Mr. Monsour's assets that he acquired either alone or with others excluding petitioner after he married her included the following assets acquired in the years indicated.

In 1971, Mr. Monsour bought a house situated on 68 acres of land known as Open Heart located in the mountains in Fairfield Township, Pennsylvania (Open Heart property).

In 1973, Mr. Monsour and his three brothers, Robert Monsour, Roy Monsour, and Howard Monsour (collectively, Mr. Monsour's brothers), formed a partnership known as Monsour Gator Groves (Monsour Gator Groves), which invested in a 290-acre orange grove located near Sarasota, Florida (Sarasota). In 1989, they sold that partnership.

In 1974, Mr. Monsour and Mr. Monsour's brothers formed a partnership known as Laurel Valley Farms, which invested in

cattle situated on farmland located in Pennsylvania.

In 1979, Mr. Monsour purchased several condominiums with ocean views in a condominium hotel known as the Three Crowns Hotel located in Sarasota.

At a time not disclosed by the record after Mr. Monsour invested in the Three Crowns Hotel in 1979 and before July 3, 1983, he purchased 40 percent of the stock of a corporation known as Azure Tides, Inc., which owned a hotel (Azure Tides Hotel) located adjacent to the Three Crowns Hotel.

At a time not disclosed by the record after Mr. Monsour invested in Azure Tides, Inc., and before July 3, 1983, he purchased 33-1/3 percent of the stock of a corporation which owned a shopping center known as Georgetown Square[2] located in Sarasota.

At a time not disclosed by the record before July 3, 1983, Mr. Monsour invested in the Three Crowns Hotel Back Court, a two-story motel located behind the Three Crowns Hotel.

Around 1980, Mr. Monsour and a radiologist formed a corpora-

---

[2]The record refers to the shopping center located in Sarasota as both Georgetown Square and Georgetowne Square. For convenience, we shall refer to that shopping center as Georgetown Square.

The record refers to the following three corporations with the words "Georgetown Square" in their names in which Mr. Monsour or petitioner and Mr. Monsour owned stock: Georgetown Square, Ltd., Georgetown Square Assoc., Inc., and Georgetown Square Assoc., Ltd. The record is not clear as to which of those corporations owned the Georgetown Square shopping center.

tion known as Scanner Corporation, which invested in a CT Scan machine.

At a time not disclosed by the record before July 3, 1983, Mr. Monsour and a Mr. Seltzer invested in an apartment (Beach Road apartment) located at 450 Beach Road in Sarasota.  At a time not disclosed by the record, Mr. Seltzer became ill, and two of Mr. Monsour's brothers, Robert Monsour and Roy Monsour, purchased Mr. Seltzer's interest in that apartment.

At a time not disclosed by the record before July 3, 1983, Mr. Monsour and Mr. Seltzer invested in an apartment (Lido Beach apartment) located at 703 Lido Beach in Sarasota.  At a time not disclosed by the record, Mr. Seltzer became ill, and Mr. Monsour purchased Mr. Seltzer's interest in that apartment.

Around 1988, Mr. Monsour and Mr. Monsour's brothers invested in a medical supply company known as American Supply.

At a time not disclosed by the record, Mr. Monsour invested in a mutual fund known as MFS Lifetime.

At a time not disclosed by the record after July 3, 1983, petitioner and Mr. Monsour jointly invested in (1) eight town-houses (Irwin rental townhouses) located in Irwin, Pennsylvania, which they intended to, and did, rent and (2) unit 201 of the Azure Tides Hotel.

From around 1973 through around 1993, Mr. Monsour traveled each month (monthly trip) from Pennsylvania to the Sarasota area

in order to check on Mr. Monsour's investments in the Sarasota area (Mr. Monsour's Florida investments) which, as discussed above, included Monsour Gator Groves, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, the Three Crowns Hotel Back Court, the Beach Road apartment, and the Lido Beach apartment. With respect to each such monthly trip, Mr. Monsour usually left on a Wednesday evening and returned on the following Monday morning. At all relevant times, including throughout the taxable years at issue, petitioner knew about Mr. Monsour's monthly trips. Sometimes petitioner traveled with Mr. Monsour on those trips, although she was not involved in checking on Mr. Monsour's Florida investments.

From the time of their marriage on July 3, 1983, until 1986, petitioner and Mr. Monsour did not worry about money and did not scrutinize their discretionary spending to any significant extent. Starting in 1986 and continuing throughout the taxable years at issue, Mr. Monsour began to experience certain Federal income tax (tax) problems and certain other nontax problems (discussed below) with at least certain of Mr. Monsour's Florida investments. As a result, petitioner and Mr. Monsour began to scrutinize their discretionary spending much more than they had in the past. At all relevant times, petitioner knew that Mr. Monsour spent a large amount of money on Mr. Monsour's Florida investments and believed that that amount was extravagant. At a

time not disclosed by the record after 1986, petitioner questioned Mr. Monsour about whether Mr. Monsour's Florida investments were worthwhile, to which he responded that they were. Except for having informed petitioner that he thought his Florida investments were worthwhile, Mr. Monsour did not discuss with petitioner any of the nontax business aspects of Mr. Monsour's investments.

In 1986, Mr. Monsour began to experience tax problems when Congress enacted certain provisions into the Code that in general eliminated the favorable tax treatment that the Code had previously permitted with respect to at least certain of Mr. Monsour's Florida investments. Starting in 1986, Mr. Monsour also began to experience certain nontax problems with at least certain of those investments, including those discussed below.

At a time not disclosed by the record, Highlander Properties Enterprises, Inc. (Highlander Properties Enterprises), commenced an action in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (Florida Circuit Court) against, among others, petitioner and Mr. Monsour (Florida Circuit Court action). As a result of that action, on July 12, 1993, units 1, 2, 4, 5, 6, 201, 202, 203, 204, 205, 401, 402, 403, 404, and 405 of the Three Crowns Hotel were sold to Highlander Properties Enterprises in a foreclosure sale. Thereafter, on a date not disclosed by the record in 1994, petitioner and Mr. Monsour

signed a quitclaim deed by which they transferred to Highlander Property Enterprises units 3 and 7 of the Three Crowns Hotel, which had not been the subject of the Florida Circuit Court action.

At a time not disclosed by the record, Mr. Monsour and other stockholders of Azure Tides, Inc., were forced to sell that corporation to a hotel chain.

On March 2, 1988, petitioner and Mr. Monsour signed a continuing guaranty with respect to Georgetown Square, Ltd., which provided that they jointly and severally guaranteed the payment of any and all obligations and indebtedness of Georgetown Square, Ltd., pertaining to a $500,000 mortgage.

At a time not disclosed by the record, the mortgage on the Three Crowns Hotel Back Court was foreclosed.

Starting around 1989, pursuant to the prenuptial agreement, petitioner asked Mr. Monsour to make her the joint owner of at least certain of Mr. Monsour's assets, and Mr. Monsour agreed to do so. As discussed below, pursuant to petitioner's request, Mr. Monsour made certain transfers of Mr. Monsour's assets to peti-tioner (Mr. Monsour's transfers).[3]

In 1989, Mr. Monsour transferred to petitioner one-half of

---

[3]The record establishes that Mr. Monsour made certain other transfers to petitioner but does not establish which of Mr. Monsour's assets were included in those transfers. The record does not establish whether Mr. Monsour made any additional transfers of Mr. Monsour's assets to petitioner.

his interest in the residence of petitioner and Mr. Monsour.

In 1991, Mr. Monsour transferred to petitioner one-half of his interest in the Open Heart property.

In 1997, Mr. Monsour transferred to petitioner one-half of his interest in 30 acres of land, which at all relevant times he and one of his brothers (Howard Monsour) owned and which was located behind Monsour Medical Center, a hospital that Mr. Monsour had owned and operated at all relevant times since 1964.

In 1997, Mr. Monsour transferred to petitioner one-half of his interest in Laurel Valley Farms.

At a time not disclosed by the record, petitioner and Mr. Monsour jointly filed Form 1040, U.S. Individual Income Tax Return (Form 1040), for each of their taxable years 1987 and 1988.

On March 19, 1993, respondent issued to petitioner and Mr. Monsour a notice of deficiency (notice) with respect to their taxable years 1987 and 1988 (notice for the taxable years 1987 and 1988).  In that notice, respondent determined the following deficiencies in, and additions to, the tax of petitioner and Mr. Monsour:

| | | Additions to Tax | | | |
| --- | --- | --- | --- | --- | --- |
| Year | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6661 |
| 1987 | $15,851 | -- | $1,066 | [1] | $5,332 |
| 1988 | 21,416 | $1,627 | -- | -- | 8,133 |

[1] 50% of the interest due on the deficiency.

Attached to the notice for the taxable years 1987 and 1988 was, inter alia, Form 886-A, EXPLANATION OF ITEMS (Form 886-A), which provided in pertinent part as follows:

INTEREST INCOME - MONSOUR FAMILY INVESTMENTS

It is determined that you understated your taxable interest income received from Monsour Family Investments by $12,334.00 and $10,014.00 for the years ending December 31, 1987 and December 31, 1988, respectively. Therefore, your taxable income is increased $12,334.00 for 1987 and $10,014.00 for 1988.

LOSS - 3 CROWNS HOTEL

Expenses incurred in connection with 3 Crowns Hotel were not for an activity entered into for profit. Therefore, the $126,632.00 shown on your return for 1987 and the $136,461.00 shown on your return for 1988 as deductions are not allowable under Section 183 of the Internal Revenue Code and your taxable income is increased accordingly.

TAXES - SCHEDULE A
INTEREST EXPENSE - SCHEDULE A

The taxes and interest expense deducted on Schedule C for 3 Crowns Hotel are allowable as itemized deductions on Schedule A. Your taxable income for 1987 is, therefore, decreased by $13,319.00 for taxes and $65,624.00 for interest. Your taxable income for 1988 is decreased by $12,791 for taxes and by $55,328.00 for interest.

PREVIOUSLY AGREED ADJUSTMENTS

You signed an agreement on April 8, 1992 consenting to the following adjustments:

|                          | 1987      | 1988       |
|--------------------------|-----------|------------|
| 3 Crowns Motel           | $10,681   | $ 3,171    |
| Interest & Dividend Income | 3,622   | 8,523      |
| Sched. C Deductions - Medical Consultant | 8,334 | |
| Sched. C Deductions - Medical Technician | 6,109 | 1,200 |
| Partnership Income & Losses | 33,461 | 87,397 |
| Sched. C Depreciation - Azure Tides Hotel | | 2,688 |
| Capital Gains & Losses   | 3,000     | 11,209     |
| Itemized Deductions      | -28,634   | 28,634     |
|                          | $30,573 [1] | $142,822 |

[1]Form 886-A erroneously showed the total of the adjustments for 1988 to which petitioner and Mr. Monsour had previously agreed as $142,802.

On June 17, 1993, petitioner and Mr. Monsour filed a petition (petition for the taxable years 1987 and 1988) in the Court with respect to the notice for the taxable years 1987 and 1988. (We shall refer to the case that petitioner and Mr. Monsour commenced when they filed the petition for the taxable years 1987 and 1988 as the case for the taxable years 1987 and 1988.) In that petition, petitioner and Mr. Monsour alleged, inter alia, that respondent erred in failing to determine that petitioner is entitled to relief under section 6013(e).

William F. Winschel (Mr. Winschel) represented petitioner and Mr. Monsour in the case for the taxable years 1987 and 1988. Edward J. Laubach, Jr. (Mr. Laubach), represented respondent in that case.

On November 1, 1994, pursuant to the agreement of the parties, the Court entered a decision in the case for the taxable years 1987 and 1988 (stipulated decision in the case for the

taxable years 1987 and 1988).  That decision provided in perti-
nent part as follows:

>    Pursuant to agreement of the parties in this case,
> it is
>
>    ORDERED and DECIDED:  That there are deficiencies
> in income tax due from the petitioners for the taxable
> years 1987 and 1988 in the amounts of $3,827 and
> $10,463, respectively;
>
>    That there is an addition to the tax due from the
> petitioners under the provisions of I.R.C. § 6661 for
> the taxable years 1987 and 1988 in the amounts of $930
> and $2,158, respectively; and
>
>    That there are no additions to the tax due from
> the petitioners under the provisions of I.R.C. §§
> 6653(a)(1)(A), 6653(a)(1)(B) and 6653(a)(1) for the
> taxable years 1987 and 1988.

Joseph N. Iezzi (Mr. Iezzi), a certified public accountant,
prepared Form 1040 that petitioner and Mr. Monsour signed and
jointly filed for each of their taxable years 1989 (1989 joint
return), 1990 (original 1990 joint return), 1991 (1991 joint
return), 1992 (1992 joint return), and 1993 (1993 joint return).[4]

---

[4]Petitioner and Mr. Monsour filed a joint tax return (joint
return) for each of their taxable years 1989, 1990, 1991, 1992,
and 1993 on the dates indicated:

Mr. Iezzi also prepared two Forms 1040X, Amended U.S. Individual Income Tax Return, that petitioner and Mr. Monsour signed and jointly filed for their taxable year 1990 (first 1990 amended joint return and second 1990 amended joint return, respectively).

The joint returns for the taxable years at issue showed the following:

_____

| Joint Return | Date Filed |
|---|---|
| 1989 joint return | Apr. 28, 1992 |
| Original 1990 joint return | Oct. 18, 1991 |
| 1991 joint return | Oct. 20, 1992 |
| 1992 joint return | Dec. 27, 1993 |
| 1993 joint return | Oct. 25, 1994 |

|  | 1989 Joint Return | Original 1990 Joint Return | 1991 Joint Return | 1992 Joint Return | 1993 Joint Return |
|---|---|---|---|---|---|
| Wages, salaries, tips, etc. | $260,128 | $267,160 | $153,375 | $105,990 | $94,594 |
| Taxable interest income | 151,395 | 71,777 | 17,679 | 3,830 | 1,184 |
| Dividend income | 552 | 435 | 645 | -- | -- |
| Business income or (loss) from Schedule C | (187,336) | (177,287) | (165,526) | (27,912) | (24,275) |
| Capital gain distributions | 7 | -- | -- | -- | -- |
| Taxable IRA distributions | -- | -- | -- | 23,968 | 21,090 |
| Taxable pensions and annuities | 2,000 | 1,189 | 0 | -- | 20,898 |
| Rents, royalties, partnerships, estates, trusts, etc., from Schedule E | (334,910) | 193,578 | 40,882 | (58,533) | (156,563) |
| Other income | 255 | 253 | -- | -- | 42,100 |
| Total income | -- | 357,105 | 47,055 | 44,343 | (972) |
| Total tax | -- | 36,370 | 0 | 1,650 | 350 |
| Total payments of tax | 3,134 | 1,657 | 0 | 445 | 76 |
| Amount of tax due | -- | [1]34,713 | 0 | [2]1,255 | [3]274 |

[1]When petitioner and Mr. Monsour filed their original 1990 joint return, they did not pay the amount of tax shown due in that return.

[2]When petitioner and Mr. Monsour filed their 1992 joint return, they paid the $1,255 of tax shown due in that return.

[3]When petitioner and Mr. Monsour filed their 1993 joint return, they paid the $274 of tax shown due in that return.

Schedule C, Profit or Loss From Business (Schedule C), included as part of each of the joint returns for the taxable years at issue showed the following net profit or (loss) with respect to the following businesses:

| Schedule C Relating to | 1989 Joint Return | Original 1990 Joint Return | 1991 Joint Return | 1992 Joint Return | 1993 Joint Return |
|---|---|---|---|---|---|
| Three Crowns Hotel | ($99,414) | ($98,176) | ($91,122) | -- | -- |
| Azure Tides Hotel | (16,803) | (5,899) | (24,927) | ($17,817) | ($15,749) |
| Three Crowns Hotel Back Court | (73,219) | (73,212) | (41,975) | -- | -- |
| 1 Linden Drive | 2,100 | -- | -- | -- | -- |
| Petitioner's law practice | -- | -- | (7,502) | (10,095) | (8,526) |

Schedules C relating to the Three Crowns Hotel included as part of the 1989 joint return and as part of the original 1990 joint return identified petitioner and Mr. Monsour as proprietors. Schedule C relating to that hotel included as part of the 1991 joint return identified Mr. Monsour as the proprietor.

Schedule C relating to the Azure Tides Hotel included as part of each of the joint returns for the taxable years at issue identified Mr. Monsour as the proprietor.

Schedules C relating to the Three Crowns Hotel Back Court included as part of the 1989 joint return and as part of the original 1990 joint return identified petitioner and Mr. Monsour as proprietors. Schedule C relating to that motel included as part of the 1991 joint return identified Mr. Monsour as the proprietor.

Schedule C relating to 1 Linden Drive included as part of the 1989 joint return identified petitioner as the proprietor and showed "Medical Technician" as the principal business or profession. The net profit shown in that Schedule C resulted from petitioner's having performed certain bookkeeping tasks for

Scanner Corporation in 1989, for which she was compensated a few hundred dollars per month.

Schedule E, Supplemental Income and Loss (Schedule E), included as part of each of the joint returns for the taxable years at issue showed, inter alia, the following income or (losses) with respect to the following rentals:

| Schedule E Relating to | 1989 Joint Return | Original 1990 Joint Return | 1991 Joint Return | 1992 Joint Return | 1993 Joint Return |
|---|---|---|---|---|---|
| Lido Beach Apartment | ($7,041) | ($931) | ($3,755) | ($3,644) | ($1,757) |
| Irwin Rental Townhouses | (5,494) | (642) | (3,522) | (3,902) | 8,032 |
| Beach Road Apartment | (3,844) | (267) | -- | -- | -- |
| Island House in Sarasota | -- | -- | (19,621) | (36,827) | (31,275) |

Schedule E included as part of each of the joint returns for the taxable years at issue showed, inter alia, the following income or (loss) with respect to the following partnerships and S corporations:

| Schedule E Relating to | 1989 Joint Return | Original 1990 Joint Return | 1991 Joint Return | 1992 Joint Return | 1993 Joint Return |
|---|---|---|---|---|---|
| Monsour Gator Groves | ($10,579) | -- | -- | -- | -- |
| Laurel Valley Farms | (81,380) | ($40,300) | ($25,611) | ($33,533) | ($12,134) |
| Azure Tides, Inc. | (210,727) | [1]-- | (7) | (58,156) | (119,429) |
| Georgetown Square, Ltd. | [2](119,748) | (23,518) | -- | -- | -- |
| Georgetown Square Assoc., Inc. | (73) | (18) | -- | -- | -- |
| Georgetown Square Assoc., Ltd. | (7,245) | -- | -- | -- | -- |
| Scanner Corporation | 111,221 | 259,254 | 93,398 | 72,451 | -- |

[1]The joint return did not show any amount because, as discussed below, petitioner and Mr. Monsour did not receive Schedule K-1, Shareholder's Share of Income, Credits, Deductions, Etc. (Schedule K-1), relating to Azure Tides, Inc., until after they filed the original 1990 joint return.
[2]Of the $119,748 total loss reported, $112,583 was reported as a passive loss and $7,165 was reported as a nonpassive loss.

Petitioner did not examine in detail the 1989 joint return, the original 1990 joint return, the 1991 joint return, the 1992 joint return, and the 1993 joint return before she signed each such return. Nonetheless, in signing each of those returns, she was aware, inter alia, (1) that such returns claimed substantial losses in Schedules C ranging from $24,275 to $187,336 and in Schedules E ranging from $58,533 to $334,910, (2) that such claimed losses reduced income reported in such returns, and (3) that there were (a) no tax shown due in the 1989 joint return or the 1991 joint return, (b) tax shown due of $34,713 in the original 1990 joint return,[5] (c) tax shown due of $1,255 in the

[5]As discussed above, when petitioner and Mr. Monsour filed their original 1990 joint return, they did not pay the amount of tax shown due in that return.

1992 joint return, and (d) tax shown due of $274 in the 1993 joint return. In signing each of the joint returns for the taxable years at issue, petitioner did not raise any questions with Mr. Monsour or Mr. Iezzi regarding any of those returns. Before petitioner signed each of the joint returns for the taxable years at issue, she read the jurat clause that appeared above the signature lines in each such return.

In their first 1990 amended joint return, petitioner and Mr. Monsour showed total income as originally reported of $357,105, taxable income as originally reported of $270,922, tax as originally reported of $78,155, credits as adjusted of $1,323,[6] and total tax liability as adjusted of $76,832. In that amended return, petitioner and Mr. Monsour showed a net decrease in total income of $101,287, correct total income of $255,818, correct taxable income of $169,635, correct tax of $47,841, correct total tax liability of $46,518, and tax due of $44,861.[7] Part II, Explanation of Changes to Income, Deductions, and Credits (Part

---

[6]Petitioner and Mr. Monsour reported in the original 1990 joint return a credit of $41,785.

[7]In the original 1990 joint return, petitioner and Mr. Monsour showed tax due of $34,713. Although there were net decreases shown in the first 1990 amended return in the respective amounts of total income and taxable income reported in the original 1990 joint return, that amended return showed an increase in the tax due shown in that original return because petitioner and Mr. Monsour claimed (1) a credit of $41,785 in the original 1990 joint return and (2) a credit of $1,323 in the first 1990 amended joint return.

II of Form 1040X), of the first 1990 amended joint return pro-
vided in pertinent part as follows:

> Line 8a - Interest income from K1 (1120S) - K1 from
> Azure Tides, Inc. was not received until 11-22-91 [af-
> ter petitioner and Mr. Monsour filed their original
> 1990 joint return]

> Sch. E - Part II - Nonpassive loss from K1 (1120S) - K1
> from Azure Tides, Inc. was not received until 11-22-91
> (Copy of K1 attached).

Schedule K-1, Shareholder's Share of Income, Credits,
Deductions, Etc., relating to Azure Tides, Inc., included as part
of the first 1990 amended joint return (1990 Azure Tides, Inc.,
Schedule K-1)[8] identified Mr. Monsour as the shareholder and
showed an ordinary loss from trade or business activities of
$101,805 and portfolio interest income of $518.

In their second 1990 amended joint return, petitioner and
Mr. Monsour showed total adjusted gross income as adjusted of
$255,818, taxable income as adjusted of $169,635, tax as adjusted
of $47,841, credits as adjusted of $1,323, and total tax liabil-
ity as adjusted of $46,518.  In that amended return, petitioner
and Mr. Monsour showed a net increase in adjustments to income of
$91,920, correct total adjusted gross income of $163,898, correct
taxable income of $77,715, correct tax of $17,542, correct cred-
its of $0, correct total tax liability of $29,048, and tax due of
$27,391.  Part II of Form 1040X of the second 1990 amended joint

---

[8]The 1990 Azure Tides, Inc., Schedule K-1 is the only Sched-
ule K-1 that is part of the record in the instant case.

return provided in pertinent part as follows:

> Line 2, Adjustments to Income:
> Expenses in the amount of $91,920.00 are claimed in
> connection with legal fees and custodian fees paid for
> the purpose of protecting and preserving existing busi-
> ness assets, business income, professional reputation
> and professional employment.

At a time not disclosed by the record before July 6, 1995, respondent initiated an examination of the respective joint returns for the taxable years at issue (examination of the taxable years at issue).  On July 6, 1995, petitioner and Mr. Monsour executed Form 2848, Power of Attorney and Declaration of Representative, in which they appointed Mr. Winschel as their attorney-in-fact with respect to that examination.

At a time not disclosed by the record after the examination of the taxable years at issue began, respondent's Appeals Office (Appeals Office) began consideration of those years.  Mr. Winschel continued to represent petitioner and Mr. Monsour at the Appeals Office.

At a time not disclosed by the record before December 16, 1997, respondent issued to petitioner and Mr. Monsour a notice with respect to the taxable years at issue (notice for the taxable years at issue).[9]  In that notice, respondent made determinations for one or more of the taxable years 1989, 1991, 1992, and

---

[9]The notice for the taxable years at issue is not part of the record in the instant case.  The record does not establish whether respondent made determinations in that notice relating to any matters other than those discussed herein.

1993 of erroneous deductions with respect to Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, and the Three Crowns Hotel Back Court.[10] In the notice for the taxable years at issue, respondent also made determinations for one or more of the taxable years 1989, 1991, 1992, and 1993 of (1) omitted income with respect to Georgetown Square, (2) omitted interest income with respect to Monsour Medical Center, and (3) omitted income relating to unexplained deposits into (a) the joint bank accounts of petitioner and Mr. Monsour, (b) a separate bank account of petitioner (petitioner's separate bank account), and (c) a bank account that petitioner maintained with respect to her law practice (petitioner's law practice bank account).[11] In that notice, respondent also made determinations for one or more

---

[10]The record does not establish the respective amounts of respondent's determinations of erroneous deductions with respect to Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, and the Three Crowns Hotel Back Court. Nor does the record establish to which of the taxable years 1989, 1991, 1992, and 1993 those determinations pertain.

[11]The record does not establish the respective amounts of respondent's determinations of omitted income with respect to Georgetown Square, Monsour Medical Center, the joint bank accounts of petitioner and Mr. Monsour, petitioner's separate bank account, and petitioner's law practice bank account, although, as discussed below, the record shows that respondent made a determination of omitted income relating to petitioner's law practice bank account in an amount between $8,000 and $10,000. Nor does the record establish to which of the taxable years 1989, 1991, 1992, and 1993 those determinations pertain, although, as discussed below, the record shows that respondent made a determination of omitted income relating to petitioner's law practice bank account for two of the three taxable years 1991, 1992, and 1993.

of the taxable years 1989, 1991, 1992, and 1993 with respect to American Supply and MFS Lifetime.[12]

On December 16, 1997, petitioner and Mr. Monsour filed a petition (petition for the taxable years at issue) in the Court with respect to the notice for the taxable years at issue. (We shall refer to the case that petitioner and Mr. Monsour commenced when they filed the petition for the taxable years at issue as the case for the taxable years at issue.) In that petition, petitioner and Mr. Monsour did not make a claim that petitioner is entitled to relief under section 6013(e) with respect to any of the taxable years at issue. At no time while the case for the taxable years at issue was pending in the Court, including during the period July 22 to October 8, 1998, the date on which, pursuant to the agreement of the parties, the Court entered a decision for the taxable years at issue (discussed below), did petitioner make a claim that she is entitled to relief from joint and several liability with respect to any of those taxable years.

Mr. Winschel represented petitioner and Mr. Monsour in the case for the taxable years at issue. Mr. Laubach represented respondent in that case.

At a time not disclosed by the record before June 8, 1998,

---

[12]The record does not establish the nature and the respective amounts of respondent's determinations with respect to American Supply and MFS Lifetime. Nor does the record establish to which of the taxable years 1989, 1991, 1992, and 1993 those determinations pertain.

Mr. Laubach issued a subpoena to Monsour Medical Center in order to determine whether there was any omitted interest income with respect to that entity.  On June 8, 1998, Hugh E. Teitelbaum (Mr. Teitelbaum), legal counsel for Monsour Medical Center, responded to that subpoena and sent a copy of his response to petitioner.

Mr. Monsour met with Mr. Winschel several times to discuss the issues in the case for the taxable years at issue.[13]  Two of those meetings were dinner meetings (dinner meetings) that took place at the residence of petitioner and Mr. Monsour.  Petitioner was present at those dinner meetings.

Petitioner knew that for two of the three taxable years 1991, 1992, and 1993 respondent made a determination of omitted income relating to petitioner's law practice bank account in an amount between $8,000 and $10,000.  (We shall refer collectively to those two determinations as determinations relating to petitioner's law practice bank account.)  At petitioner's request, Mr. Winschel conceded the determinations relating to petitioner's law practice bank account.

Mr. Laubach met with Mr. Winschel several times to discuss settling the case for the taxable years at issue.  Mr. Laubach spent a lot of time in an attempt to reach a settlement of that

_____

[13]The record does not disclose how many times Mr. Monsour met in person with Mr. Winschel to discuss the case for the taxable years at issue or how many times, if any, they discussed that case over the telephone and/or in written correspondence or electronic mail.

case. That was because the issues were factually intensive and required Mr. Laubach to ask Mr. Winschel to provide him with certain documents that Mr. Winschel claimed supported the positions of petitioner and Mr. Monsour with respect to the case for the taxable years at issue. Based upon certain documentation that Mr. Winschel provided to Mr. Laubach, respondent conceded respondent's determination of omitted income with respect to Georgetown Square for one or more of the taxable years 1989, 1991, 1992, and 1993 not disclosed by the record.[14]

On October 8, 1998, pursuant to the agreement of the parties, the Court entered a decision in the case for the taxable years at issue (stipulated decision in the case for the taxable years at issue). That decision provided as follows:

> Pursuant to agreement of the parties in this case, it is
>
> ORDERED and DECIDED: That there are deficiencies in income tax due from the petitioners for the taxable years 1989, 1991, 1992, and 1993 in the amounts of $31,349, $8,943, $9,773, and $28,578, respectively.
>
> That the following statement shows the petitioners' income tax liability for the taxable year 1990:

[14]The record does not establish whether respondent conceded in full and/or compromised in part any of the other determinations in the notice for the taxable years at issue.

          Tax liability                        $73,524

          Tax assessed:
                  Paid        $50,853.78
                  Not Paid     29,956.22

                                             80,810

          Deficiency (to be assessed)      None

        That there are additions to the tax due from the
petitioners under the provisions of I.R.C. § 6651(a)(1)
for the taxable years 1989, 1992, and 1993 in the a-
mounts of $7,172, $1,520, and $1,458, respectively.

        That there are penalties due from the petitioners
under the provisions of I.R.C. § 6662(a) for the tax-
able years 1989, 1991, 1992, and 1993 in the amounts of
$2,165, $1,789, $426, and $3,923, respectively.

        That there are no additions to the tax due from
the petitioners under the provisions of I.R.C.
§ 6651(a)(1) for the taxable years 1990 and 1991.

        That there is no penalty due from the petitioners
under the provisions of I.R.C. § 6662(a) for the year
1990.

At a time not disclosed by the record, petitioner and Mr.

Monsour jointly filed Form 1040 for their taxable year 1998 (1998

joint return).  At the time of the trial in this case in Septem-

ber 2003, petitioner and Mr. Monsour had an unpaid liability of

$60,000 with respect to their 1998 joint return.

On February 12, 2001, petitioner filed with respondent Form

8857, Request for Innocent Spouse Relief (And Separation of

Liability and Equitable Relief), with respect to each of the

taxable years 1989, 1990, 1991, 1992, and 1993 (petitioner's Form

8857).  Petitioner attached the following statement to peti-

tioner's Form 8857:

### ATTACHMENT

The understatement in tax for the periods in question were due to investments and business activities of my husband, [about] all of which I had no information or knowledge.

During these periods I had employment and educational pursuits totally unrelated to my husband's investment and business activities.  All of the understatements in question were the results of an audit of our tax return.

On September 12, 2002, in response to petitioner's Form 8857, respondent issued to petitioner a notice of determination. In that notice, respondent denied petitioner's request for relief under section 6015.

The liability for each of the taxable years 1989, 1991, 1992, and 1993 is from the assessment that respondent made for each such year based upon the stipulated decision in the case for the taxable years at issue.  The liability for the taxable year 1990 is from the unpaid tax shown due in the original 1990 joint return, plus interest thereon as provided by law, which respondent assessed, plus an additional assessment of $3,978 to which petitioner and Mr. Monsour agreed after the examination of the taxable years at issue began and before respondent issued the notice for the taxable years at issue.

OPINION

Burden of Proof

The parties agree that petitioner bears the burden of prov-

ing that she is entitled to relief under section 6015(b) and (f). The parties have a disagreement over who bears the burden of showing whether section 6015(g)(2) precludes petitioner from the relief that she claims under section 6015. According to petitioner, respondent bears the burden of proof under section 6015(g)(2).[15]

Except where section 6015 provides otherwise, see sec. 6015(c)(3)(A)(ii), (c)(3)(C), (d)(3)(C), petitioner bears the burden of proof under that section. See Rule 142(a); see also Jonson v. Commissioner, 118 T.C. 106, 113 (2002), affd. 353 F.3d 1181 (10th Cir. 2003). Section 6015 does not provide that respondent bears the burden of proof under section 6015(g)(2). We conclude that petitioner bears the burden of proof under that section.

---

[15]Petitioner argues, in the alternative, that respondent should be precluded from relying on sec. 6015(g)(2) because respondent did not raise that provision in respondent's pleadings. We reject petitioner's alternative argument regarding sec. 6015(g)(2). Although respondent did not raise that section in respondent's pleadings, respondent argued in the pretrial memorandum that respondent submitted to the Court that sec. 6015(g)(2) precluded petitioner from relief under sec. 6015, and petitioner argued in the pretrial memorandum that petitioner submitted to the Court that sec. 6015(g)(2) did not preclude petitioner from relief under sec. 6015. Moreover, at trial, the parties adduced evidence relating to petitioner's participation in the case for the taxable years at issue. On the record before us, we find that the parties tried the issue under sec. 6015(g)(2) by consent and that that issue is treated in all respects as having been raised in respondent's pleadings. See Rule 41(b)(1); see also Pierce v. Commissioner, T.C. Memo. 2003-188.

Record in the Instant Case

In support of her position in the instant case, petitioner relies principally on her own testimony and the testimony of Mr. Monsour. We did not find the testimony of petitioner and Mr. Monsour to be credible in certain material respects. We shall not rely on any such testimony to support petitioner's position in the instant case.

The testimony of petitioner and Mr. Monsour on which we are willing to rely and the documentary evidence[16] that petitioner introduced into the record create a record that presents signifi-cant proof problems for petitioner. For example, the record does not establish (1) the taxable year or years (i.e., 1989, 1991, 1992, and/or 1993)[17] to which each of the determinations about which we are aware[18] pertains and (2) the portion, if any, of the

---

[16]Petitioner did not proffer into evidence certain documen-tary evidence (e.g., the notice for the taxable years at issue) that is material to petitioner's position in the instant case.

[17]The parties stipulated that the liability for the taxable year 1990 is from the unpaid tax shown due in the original 1990 joint return, plus interest thereon as provided by law, which respondent assessed, plus an additional assessment of $3,978 to which petitioner and Mr. Monsour agreed after the examination of the taxable years at issue began and before respondent issued the notice for the taxable years at issue.

[18]Although the record shows that respondent made certain determinations in the notice for the taxable years at issue with respect to the taxable years 1989, 1991, 1992, and 1993, the record does not establish whether those were the only determina-tions that respondent made in that notice. See supra note 9. Except for a determination of omitted income with respect to

(continued...)

deficiency or understatement[19] for each of those years that is attributable to each such determination.[20]

Although we believe that Mr. Winschel[21] would have been able to fill in most, if not all, of the significant gaps in the record relating to the foregoing and certain other matters material to petitioner's position in this case, petitioner did not call him to testify on her behalf. We presume that petitioner did not call Mr. Winschel as a witness because his testimony would not have been favorable to petitioner's position. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

---

[18](...continued)
Georgetown Square for one or more of those years not disclosed by the record that respondent conceded, the record also does not establish whether respondent conceded in full and/or compromised in part in the case for the taxable years at issue any of the determinations in that notice. See supra note 14.

[19]Petitioner claims relief under sec. 6015(b) and, in the alternative, under sec. 6015(f) for each of the taxable years 1989, 1991, 1992, and 1993. She also claims relief under sec. 6015(f) for the taxable year 1990. Sec. 6015(b) uses, inter alia, the term "understatement", and sec. 6015(f) uses, inter alia, the term "deficiency". For purposes of this case, the meaning of those terms is the same. See secs. 6211, 6015(b)(3). For convenience, we shall use the term "understatement".

[20]See supra notes 10 through 12.

[21]Mr. Winschel represented petitioner and Mr. Monsour with respect to, inter alia, respondent's examination of the taxable years at issue, the Appeals Office consideration of those years, respondent's issuance of the notice for those years, and the case that petitioner and Mr. Monsour commenced in the Court for those years.

Section 6015(g)(2)

Section 6015(g)(2) provides:

SEC. 6015.   RELIEF FROM JOINT AND SEVERAL LIABILITY ON
             JOINT RETURN.

        *       *       *       *       *       *       *

    (g) Credits and Refunds.--

        *       *       *       *       *       *       *

    (2) Res judicata.--In the case of any election
under subsection (b) or (c), if a decision of a court
in any prior proceeding for the same taxable year has
become final, such decision shall be conclusive except
with respect to the qualification of the individual for
relief which was not an issue in such proceeding.  The
exception contained in the preceding sentence shall not
apply if the court determines that the individual par-
ticipated meaningfully in such prior proceeding.

The principal dispute between the parties under section

6015(g)(2) is whether petitioner participated meaningfully in the

case for the taxable years at issue.[22]  In support of petitioner's

position that she did not participate meaningfully in that case,

she argues:[23]

---

[22]In addition to disputing whether petitioner participated
meaningfully in the case for the taxable years at issue, peti-
tioner argues that "By its very language, Section 6015(g)(2) is
inapplicable to actions under Section 6015(f), being only appli-
cable to 'elections under subsections (b) and (c)'.  See Section
6015(g)(2)."  We reject petitioner's argument.  The Court has
held that sec. 6015(g)(2) applies to claims for relief under sec.
6015(b) and (c) as well as sec. 6015(f).  Thurner v. Commis-
sioner, 121 T.C. 43, 51-52 (2003).

[23]Throughout petitioner's briefs, petitioner relies on,
inter alia, final regulations issued under sec. 6015 that are
applicable for elections under sec. 6015(b) and (c) or requests
(continued...)

Petitioner and her husband were represented by Attorney William Winschel in the * * * [case for the taxable years at issue]. Petitioner's husband was involved in all meetings with the attorney * * * while Petitioner was not involved at all. * * * Petitioner's husband did not discuss the case with her * * * and ultimately had the case settled by Attorney Winschel. * * * Only two (2) minor items affected Petitioner directly in that case, namely two (2) years of alleg- edly omitted attorney income, neither of which could have resulted in any additional tax liability. * * * Accordingly, Petitioner's participation could not be meaningful in the * * * [case for the taxable years at issue].

Respondent counters:

Petitioner argues that she was not personally "involved" in the prior proceeding. * * * petitioner * * * told [Mr.] Winschel to concede an issue. She also received information involved in the settlement. * * * Dr. Monsour testified that petitioner, Dr. Monsour and attorney Winschel were present at several dinner meetings at the Monsour home. The purpose of the meetings was to discuss the Tax Court case. * * *

        *         *         *         *         *         *         *

Furthermore, petitioner chose not to call [Mr.] Winschel as a witness. * * * [Mr.] Winschel could have testified as to petitioner's participation in the prior proceeding. From the failure to call [Mr.] Winschel to testify it can only be inferred that [Mr.] Winschel's testimony, if given, would have been unfavorable to petitioner. * * *

Although Mr. Winschel could have shed light on the extent of

petitioner's participation in the case for the taxable years at

issue, as discussed above, petitioner chose not to call him to

_____

[23](...continued)
for relief under sec. 6015(f) that are filed on or after July 18, 2002. Sec. 1.6015-9, Income Tax Regs. Those final regulations are not applicable in the instant case. That is because peti- tioner filed petitioner's Form 8857 on Feb. 12, 2001.

testify on her behalf, from which we have concluded that his testimony would not have been favorable to her position. See Wichita Terminal Elevator Co. v. Commissioner, supra. Instead, petitioner relies on Mr. Monsour's testimony to support her contentions that Mr. Monsour, and not petitioner, was involved in all of the meetings with Mr. Winschel with respect to the case for the taxable years at issue and that Mr. Monsour did not discuss that case with her. We did not find credible, and we shall not rely on, Mr. Monsour's testimony regarding who was involved in the meetings with Mr. Winschel with respect to the case for the taxable years at issue and whether Mr. Monsour discussed that case with petitioner.

Petitioner did not claim in the petition[24] for the taxable years at issue that she was entitled to relief under section 6013(e)[25] with respect to any of the taxable years at issue.[26] Nor

---

[24]Petitioner and Mr. Monsour filed the petition for the taxable years at issue on Dec. 16, 1997.

[25]In 1998, Congress repealed sec. 6013(e) and replaced it with sec. 6015. Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3201, 112 Stat. 734. Sec. 6015 applies to any liability for tax remaining unpaid as of July 22, 1998. RRA 1998 sec. 3201(g)(1), 112 Stat. 740.

[26]Petitioner does not, and could not reasonably, claim that she was unaware of provisions in the Code granting relief in certain circumstances from joint and several liability. In the petition for the taxable years 1987 and 1988, petitioner and Mr. Monsour alleged, inter alia, that respondent erred in failing to conclude that petitioner is entitled to relief under sec.

(continued...)

did petitioner make a claim at any other time while the case for the taxable years at issue was pending in the Court, including during the period July 22 to October 8, 1998,[27] that she was entitled to relief from joint and several liability with respect to any of those years. Petitioner and Mr. Monsour agreed with respondent that she was jointly and severally liable for deficiencies in, additions to, and penalties on tax that totaled $40,686, $10,732, $11,719, and $33,959 for the taxable years 1989, 1991, 1992, and 1993, respectively, and that the Court should enter a decision to that effect.[28] Under such circumstances, it strains credulity that petitioner, an attorney, would have agreed to the stipulated decision that the Court entered in the case for the taxable years at issue without having meaningfully participated in discussions about that case with Mr.

---

[26](...continued)
6013(e). The stipulated decision in the case for the taxable years 1987 and 1988 did not grant petitioner relief under that section. Moreover, petitioner and Mr. Monsour were represented by Mr. Winschel in the case for the taxable years at issue, and there is no suggestion in the record that there was any misunderstanding on the part of petitioner, Mr. Winschel, or Mr. Laubach, respondent's counsel in that case, which precluded petitioner from raising a claim for relief from joint and several liability.

[27]On Oct. 8, 1998, the Court entered the stipulated decision in the case for the taxable years at issue.

[28]The stipulated decision in the case for the taxable years at issue showed that there was no addition to tax due from petitioner and Mr. Monsour for the taxable year 1991. That decision also showed $29,956.22 in unpaid tax due from petitioner and Mr. Monsour for the taxable year 1990.

Winschel and/or Mr. Monsour or otherwise having meaningfully participated in that case.[29]

Petitioner relies on Mr. Laubach's testimony, the 1991 joint return, the 1992 joint return, and the 1993 joint return to support her contention that only "two (2) years of allegedly omitted attorney income" directly affected petitioner in the case for the taxable years at issue, viz., respondent's determinations in the notice that there was income relating to petitioner's law practice bank account that petitioner and Mr. Monsour did not report in their joint returns for two of the three taxable years 1991, 1992, and 1993.[30]  Our resolution of the question whether petitioner participated meaningfully in the case for the taxable years at issue within the meaning of section 6015(g)(2) does not depend on how many determinations in the notice for those years "affected Petitioner directly".[31]  Petitioner filed jointly with

---

[29]It is noteworthy that Mr. Teitelbaum, legal counsel for Monsour Medical Center, sent to petitioner, and not to Mr. Monsour and not even to Mr. Monsour and petitioner, a copy of his response to the subpoena that respondent served on Monsour Medical Center in the case for the taxable years at issue with respect to a determination of omitted interest income that respondent made in the notice for the taxable years at issue for one or more of the taxable years 1989, 1991, 1992, and 1993 with respect to that entity.

[30]The record does not establish, and petitioner does not even allege, for which two of the three taxable years 1991, 1992, and 1993 respondent made the determination of unreported income relating to petitioner's law practice bank account.

[31]In any event, we find that neither Mr. Laubach's testimony
(continued...)

Mr. Monsour a return for each of the taxable years at issue and was jointly and severally liable for the tax shown due in each of those returns and for any deficiency in, addition to, and penalty on the tax for each of those years to which petitioner and Mr. Monsour and respondent agreed and which the Court sustained in the stipulated decision in the case for the taxable years at issue.[32]

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that she did not participate meaningfully in the case for the taxable years at issue and that the stipulated decision in that case, which did not grant petitioner relief from joint and several liability, is not conclusive in the instant case. See sec. 6015(g)(2). On that record, we hold that section 6015(g)(2) precludes petitioner from the relief that she claims under section 6015(b) and (f). See Thurner v. Commissioner, 121 T.C. 43, 51-52 (2003).

---

[31](...continued)
nor the joint returns for the taxable years 1991, 1992, and 1993 support petitioner's contention that the determinations relating to petitioner's law practice bank account were the only determinations in the notice for the taxable years at issue that "affected Petitioner directly". We have found that respondent made determinations in that notice of omitted income relating to the joint bank accounts of petitioner and Mr. Monsour and relating to petitioner's separate bank account. At a minimum, such determinations also "affected Petitioner directly".

[32]See supra note 28.

For the sake of completeness, we shall address whether, assuming arguendo that we had not held that section 6015(g)(2) precludes petitioner from the relief that she claims under section 6015(b) and (f), petitioner would be entitled to such relief.

Section 6015(b)

Introduction

Petitioner claims that she is entitled to relief under section 6015(b) for each of the taxable years 1989, 1991, 1992, and 1993.[33]  Section 6015(b) provides:

> SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON
> JOINT RETURN.
>
> *      *      *      *      *      *      *
>
> (b) Procedures For Relief From Liability Applicable
> to All Joint Filers.--
>
> (1) In general.--Under procedures prescribed
> by the Secretary, if--
>
> (A) a joint return has been made for a
> taxable year;
>
> (B) on such return there is an under-
> statement of tax attributable to erroneous
> items of 1 individual filing the joint return;
>
> (C) the other individual filing the joint
> return establishes that in signing the return
> he or she did not know, and had no reason to
> know, that there was such understatement;
>
> (D) taking into account all the facts and

---

[33]In the alternative, petitioner claims relief under sec. 6015(f) for each of the taxable years 1989, 1991, 1992, and 1993. She also claims relief under that section for the taxable year 1990.

circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects (in such form as the Secretary may prescribe) the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election, * * *

Section 6015(b)(1) is similar to section 6013(e)(1).  We may look at cases interpreting section 6013(e)(1) for guidance when analyzing parallel provisions of section 6015.  See Jonson v. Commissioner, 118 T.C. at 119.  The failure by a spouse requesting relief (requesting spouse) under section 6015(b) to satisfy any of the requirements of that section prevents such spouse for qualifying for such relief.  Alt v. Commissioner, 119 T.C. 306, 313 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

The parties agree that petitioner satisfies section 6015(b)(1)(A) and (E).  Petitioner contends, and respondent disputes, that she satisfies section 6015(b)(1)(B), (C), and (D).

Section 6015(b)(1)(B)

In order to satisfy section 6015(b)(1)(B), petitioner must establish that there is an understatement of tax for each of the taxable years 1989, 1991, 1992, and 1993 that is attributable to erroneous items of Mr. Monsour.  It is petitioner's position that

The testimony of * * * [Mr. Monsour and Mr. Laubach] delineated the issues before the Court that led to the understatements [sic] for each year * * *.  All

of those issues (except the minor issue involving Petitioner's law office income adjustment) involved only Petitioner's husband.  Clearly, all of the understatements could only be attributable to the husband's activities, namely his investments or omissions from income, since only he was involved in those activities.

Respondent counters that

a portion of the deficiencies for two years were from unreported income from petitioner's law practice and not solely from Dr. Monsour.  Also, for three years of deficiencies, it is more likely than not that unreported income reflected in deposits to joint accounts of petitioner and Dr. Monsour and single accounts in the name of petitioner are part of the deficiencies.

    * * * [Moreover,] there is no evidence as to the amount of an understatement of tax now due for a particular year as to a specific erroneous item of her husband. * * *

The determinations about which we are aware[34] that respondent made in the notice for the taxable years at issue relate to the joint bank accounts of petitioner and Mr. Monsour, petitioner's separate bank account, petitioner's law practice bank account, Monsour Medical Center, Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square,[35] the Three Crowns

---

[34]See supra notes 9 through 12 and 18 and accompanying text.

[35]We have found that respondent conceded respondent's determination of omitted income with respect to Georgetown Square for one or more of the taxable years 1989, 1991, 1992, and 1993 not disclosed by the record.  In the notice for the taxable years at issue, respondent also made a determination of an erroneous deduction with respect to Georgetown Square for one or more of the taxable years 1989, 1991, 1992, and 1993 not disclosed by the record.  Hereinafter, our references to the determination with respect to Georgetown Square shall be to a determination of an erroneous deduction for one or more of those years.

Hotel Back Court, American Supply, and MFS Lifetime.  As discussed above, the record does not establish, inter alia, (1) the taxable year or years (i.e., 1989, 1991, 1992, and/or 1993) to which each of the determinations about which we are aware pertains and (2) the portion, if any, of the understatement for each of those years that is attributable to each such determination.  On the record before us, we are unable to find whether or not each of respondent's determinations about which we are aware relates to an erroneous item under section 6015(b)(1)(B) that gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993.

Assuming arguendo that each of respondent's determinations about which we are aware had related to such an erroneous item, we turn first to petitioner's contention that the only such erroneous items that involved her were with respect to petitioner's law practice bank account.  We have found that, in addition to the determinations relating to petitioner's law practice bank account, the determinations relating to the joint bank accounts of peti- tioner and Mr. Monsour and petitioner's separate bank account affected petitioner directly.[36]  On the record before us, we find that petitioner has failed to establish that the determinations with respect to petitioner's law practice bank account, the joint bank accounts of petitioner and Mr. Monsour, and petitioner's

---

[36]See supra note 31.

separate bank account related to erroneous items of Mr. Monsour under section 6015(b)(1)(B).

We turn now to petitioner's contention that each of the determinations relating to Monsour Medical Center, Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, the Three Crowns Hotel Back Court, American Supply, and MFS Lifetime did not involve her. Assuming arguendo that those determinations had related to erroneous items of Mr. Monsour that gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993 (assumed erroneous items of Mr. Monsour), on the record before us, we find that petitioner has failed to establish (1) the taxable year or years (i.e., 1989, 1991, 1992, and/or 1993) to which such assumed erroneous items of Mr. Monsour pertain and (2) the portion of the understatement for each of those years that is attributable to such assumed erroneous items. We have found that petitioner has failed to establish that the determinations relating to peti- tioner's law practice bank account, the joint bank accounts of petitioner and Mr. Monsour, and petitioner's separate bank account related to erroneous items of Mr. Monsour under section 6015(b)(1)(B). Consequently, those determinations may have related to erroneous items of petitioner that gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993.

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that there is an understatement of tax for any of the taxable years 1989, 1991, 1992, and 1993 that is attributable to erroneous items of Mr. Monsour. On that record, we further find that petitioner has failed to satisfy section 6015(b)(1)(B) for any of those years.[37]

### Conclusion

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that she is entitled to relief under section 6015(b) for any of the taxable years 1989, 1991, 1992, and 1993.

### Section 6015(f)

Petitioner claims, in the alternative, that she is entitled to relief under section 6015(f) for each of the taxable years 1989, 1991, 1992, and 1993. She also claims that she is entitled to relief under that section for the taxable year 1990. We review respondent's denial of relief under section 6015(f) for abuse of discretion. Butler v. Commissioner, 114 T.C. 276, 292 (2000).

Section 6015(f) provides:

---

[37]Assuming arguendo that we had found that petitioner satisfied sec. 6015(b)(1)(B), on the record before us, we find for the reasons set forth below in our consideration of petitioner's position with respect to sec. 6015(f) that petitioner has failed to establish that she satisfies sec. 6015(b)(1)(C) and (D) for any of the taxable years 1989, 1991, 1992, and 1993.

SEC. 6015.   RELIEF FROM JOINT AND SEVERAL LIABILITY ON
             JOINT RETURN.

     *        *        *        *        *        *        *

     (f) Equitable Relief.–Under procedures prescribed
by the Secretary, if--

          (1) taking into account all the facts and
     circumstances, it is inequitable to hold the indi-
     vidual liable for any unpaid tax or any deficiency
     (or any portion of either); and

          (2) relief is not available to such individual
     under subsection (b) or (c),

the Secretary may relieve such individual of such lia-
bility.

We have found that petitioner is not entitled to relief under

section 6015(b) for any of the taxable years 1989, 1991, 1992, and

1993.  The parties agree that petitioner is not entitled to relief

under section 6015(b) for the unpaid liability relating to the

taxable year 1990.  The parties also agree that petitioner is not

entitled to relief under section 6015(c) for any of the taxable

years at issue.  We conclude that section 6015(f)(2) is satisfied

with respect to each of those years.

As directed by section 6015(f), respondent has prescribed

procedures in Revenue Procedure 2000-15, 2000-1 C.B. 447 (Revenue

Procedure 2000-15),[38] that are to be used in determining whether it

---

[38]We note that Rev. Proc. 2003-61, 2003-32 I.R.B. 296 (Reve-
nue Procedure 2003-61), superseded Revenue Procedure 2000-15.
Revenue Procedure 2003-61 is effective for requests for relief
under sec. 6015(f) which were filed on or after Nov. 1, 2003, and
for requests for such relief which were pending on, and for which
                                              (continued...)

would be inequitable to find the requesting spouse liable for part or all of the liability in question.[39]  Section 4.01 of Revenue Procedure 2000-15 sets forth the following seven conditions (threshold conditions) which must be satisfied before the IRS will consider a request for relief under section 6015(f):

> (1) The requesting spouse filed a joint return for the taxable year for which relief is sought;
>
> (2) Relief is not available to the requesting spouse under § 6015(b) or 6015(c);
>
> (3) The requesting spouse applies for relief no later than two years after the date of the Service's first collection activity after July 22, 1998, with respect to the requesting spouse;
>
> (4) * * * the liability remains unpaid * * *;
>
> (5) No assets were transferred between the spouses filing the joint return as part of a fraudulent scheme by such spouses;
>
> (6) There were no disqualified assets transferred to the requesting spouse by the nonrequesting spouse. If there were disqualified assets transferred to the requesting spouse by the nonrequesting spouse, relief will be available only to the extent that the liability exceeds the value of such disqualified assets. For this purpose, the term "disqualified asset" has the meaning

---

[38](...continued)
no preliminary determination letter had been issued as of, that date.  Id. sec. 7.  Revenue Procedure 2003-61 is not applicable in the instant case.  That is because (1) petitioner filed petitioner's Form 8857 on Feb. 12, 2001, and (2) petitioner's Form 8857 was not pending on Nov. 1, 2003.

[39]The factors that we consider in determining whether it would be inequitable for purposes of sec. 6015(f) are the same as the factors that we consider in determining whether it would be inequitable for purposes of sec. 6015(b)(1)(D).  Alt v. Commissioner, 119 T.C. 306, 316 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

given such term by § 6015(c)(4)(B); and

    (7) The requesting spouse did not file the return with fraudulent intent.

If a requesting spouse satisfies all of the applicable threshold conditions, section 4.01 of Revenue Procedure 2000-15 provides that that spouse is entitled to relief under section 6015(f) for part or all of the liability in question if, taking into account all of the facts and circumstances, the IRS determines that it would be inequitable to hold the requesting spouse liable for such liability.

On brief, petitioner addresses only the threshold condition set forth in section 4.01(6) of Revenue Procedure 2000-15. According to petitioner,

> The only condition arguably not satisfied is item six in regard to the property transfers made to Petitioner by her husband.  As the parties testified, however, those transfers * * * were made pursuant to a prenuptial agreement. * * *
>
>     The transfers in question would not be [made] with "disqualified assets" as that term is defined in Section 6015(c)(4)(B) since the property transfers would have occurred more than one (1) year before the deficiencies were proposed.  See Section 6015(c)(4)(B)(ii)(I). * * *

The only threshold conditions that respondent argues petitioner does not satisfy are those set forth in section 4.01(5) through (7) of Revenue Procedure 2000-15.  According to respondent,

>     As to conditions 5 and 6, * * * There is no evidence that * * * [Mr. Monsour's transfers], when made, were not part of a scheme to defraud creditors or that

the transfers, when made, did not have as their princi-
pal purpose the avoidance of the payment of tax.  Many
of the transfers probably took place within the prohib-
ited period of I.R.C. §6015(c)(4)(B)(ii).

Threshold condition 7 of Section 4.01 requires
petitioner to show that she did not file the return with
fraudulent intent.  Petitioner testified that the ap-
proximately $9,000 of omitted income for each of two
years from her law practice was conceded by her in the
settlement of the prior Tax Court case because in her
view the $18,000 of unreported income was a small a-
mount.  This statement coupled with the unreported
income is some evidence of fraud on her part.

With respect to the threshold condition set forth in section
4.01(5) of Revenue Procedure 2000-15 (i.e., no assets were trans-
ferred between the spouses filing the joint return as part of a
fraudulent scheme by such spouses), we have found that, pursuant
to the prenuptial agreement, starting around 1989 petitioner asked
Mr. Monsour to make her the joint owner of at least certain of Mr.
Monsour's assets[40] and that Mr. Monsour agreed and did so.  On the
record before us, we find that Mr. Monsour did not transfer any
assets to petitioner as part of a fraudulent scheme by such
spouses.  On that record, we further find that for each of the
taxable years at issue petitioner satisfies the threshold condi-
tion set forth in section 4.01(5) of Revenue Procedure 2000-15.

With respect to the threshold condition set forth in section
4.01(6) of Revenue Procedure 2000-15 (i.e., there were no disqual-
ified assets transferred to the requesting spouse by the

---

[40]See _supra_ note 3.

nonrequesting spouse), the term "disqualified asset" is defined in section 6015(c)(4)(B)[41] as follows:

> SEC. 6015.  RELIEF FROM JOINT AND SEVERAL LIABILITY ON
>             JOINT RETURN.
>
> *      *      *      *      *      *      *
>
>      (c) Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.--
>
>           (4) Liability increased by reason of transfers of property to avoid tax.--
>
> *      *      *      *      *      *      *
>
>                (B) Disqualified asset. For purposes of this paragraph--
>
>                     (i) In general.--The term "disqualified asset" means any property or right to property transferred to an individual making the election under this subsection with respect to a joint return by the other individual filing such joint return if the principal purpose of the transfer was the avoidance of tax or payment of tax.
>
>                     (ii) Presumption.--
>
>                          (I) In general.--For purposes of clause (i), except as provided in subclause (II), any transfer which is made after the date which is 1 year before the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office

---

[41]Threshold condition (6) of sec. 4.01 of Revenue Procedure 2000-15 provides that, for purposes of that revenue procedure, the term "disqualified asset" has the meaning given to such term by sec. 6015(c)(4)(B).

of Appeals is sent shall be presumed to have as its principal purpose the avoidance of tax or payment of tax.

(II) Exceptions.--Subclause (I) shall not apply to any transfer * * * which an individual establishes did not have as its principal purpose the avoidance of tax or payment of tax.

Petitioner has failed to establish the date on which the IRS sent to her the first letter of proposed deficiency which allowed her an opportunity for administrative review in respondent's Appeals Office. However, we have found that, pursuant to the prenuptial agreement, starting around 1989 petitioner asked Mr. Monsour to make her the joint owner of at least certain of Mr. Monsour's assets[42] and that Mr. Monsour agreed and did so. On the record before us, we find that the principal purpose of Mr. Monsour's transfers to petitioner was not the avoidance of tax or payment of tax. See sec. 6015(c)(4)(B)(ii). On that record, we further find that petitioner has established that the presumption in section 6015(c)(4)(B)(ii) is not applicable in this case. On the record before us, we find that Mr. Monsour did not transfer any disqualified assets to petitioner. On that record, we further find that for each of the taxable years at issue petitioner satisfies the threshold condition set forth in section 4.01(6) of Revenue Procedure 2000-15.

---

[42]See supra note 3.

With respect to the threshold condition set forth in section 4.01(7) of Revenue Procedure 2000-15 (i.e., the requesting spouse did not file the joint return for each of the taxable years at issue with fraudulent intent), the mere failure to report income is not sufficient to establish fraud. Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). On the record before us, we find that petitioner did not file any of the joint returns for any of the taxable years at issue with fraudulent intent. On that record, we further find that for each of the taxable years at issue petitioner satisfies the threshold condition set forth in section 4.01(7) of Revenue Procedure 2000-15.

Where, as here, the requesting spouse satisfies the threshold conditions set forth in section 4.01 of Revenue Procedure 2000-15, section 4.02 of that revenue procedure sets forth the circumstances, in any case where a liability reported in a joint return is unpaid, under which the IRS ordinarily will grant relief to that spouse under section 6015(f). The only taxable year for which there is a liability reported in a joint return which is unpaid is 1990.[43] Petitioner does not rely on section 4.02 of Revenue Procedure 2000-15 in support of her claim for relief from that unpaid liability. Instead, she relies on section 4.03 of

---

[43]The liabilities for the remaining taxable years at issue (i.e., 1989, 1991, 1992, and 1993) arose from respondent's assessments based upon the stipulated decision in the case for the taxable years at issue.

that revenue procedure, on which she also relies in support of her claim for relief with respect to each of the taxable years 1989, 1991, 1992, and 1993.

Section 4.03 of Revenue Procedure 2000-15 provides a partial list of positive and negative factors which respondent is to take into account in considering whether respondent will grant an individual full or partial equitable relief under section 6015(f). As Revenue Procedure 2000-15 makes clear, no single factor is to be determinative in any particular case, all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exhaustive. Rev. Proc. 2000-15 sec. 4.03, 2000-1 C.B. 447, 448.

We turn now to the application of section 4.03 of Revenue Procedure 2000-15 to this case. Section 4.03(1) of Revenue Procedure 2000-15 sets forth the following positive factors which weigh in favor of granting relief under section 6015(f):

> (a) <u>Marital status</u>. The requesting spouse is separated * * * or divorced from the nonrequesting spouse.

> (b) <u>Economic hardship</u>. The requesting spouse would suffer economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

> (c) <u>Abuse</u>. The requesting spouse was abused by the nonrequesting spouse, but such abuse did not amount to duress.

> (d) <u>No knowledge or reason to know</u>. In the case of a liability that was properly reported but not paid, the requesting spouse did not know and had no reason to know

that the liability would not be paid.  In the case of a liability that arose from a deficiency, the requesting spouse did not know and had no reason to know of the items giving rise to the deficiency.

(e) Nonrequesting spouse's legal obligation.  The nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the outstanding liability.  This will not be a factor weighing in favor of relief if the requesting spouse knew or had reason to know, at the time the divorce decree or agreement was entered into, that the nonrequesting spouse would not pay the liability.

(f) Attributable to nonrequesting spouse.  The liability for which relief is sought is solely attributable to the nonrequesting spouse.

(We shall hereinafter refer to the positive factors set forth in section 4.03(1)(a), (b), (c), (d), (e), and (f) of Revenue Procedure 2000-15 as the marital status positive factor, the economic hardship positive factor, the abuse positive factor, the knowledge or reason to know positive factor, the legal obligation positive factor, and the attribution positive factor, respectively.)

With respect to the marital status positive factor set forth in section 4.03(1)(a) of Revenue Procedure 2000-15, petitioner does not dispute that that factor is not present in this case.

With respect to the economic hardship positive factor set forth in section 4.03(1)(b) of Revenue Procedure 2000-15, petitioner contends that that positive factor is present in this case. That is because, according to petitioner, "She will not be able to pay bills as due if relief should not be granted."

In determining whether a requesting spouse will suffer

economic hardship, section 4.02(1)(c) of Revenue Procedure 2000-15, to which section 4.03(1)(b) of that revenue procedure refers, requires reliance on rules similar to those provided in section 301.6343-1(b)(4), Proced. & Admin. Regs. Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., generally provides that an individual suffers an economic hardship if the individual is unable to pay his or her reasonable basic living expenses. Section 301.6343-1(b)(4), Proced. & Admin. Regs., provides, in pertinent part:

(ii) Information from taxpayer. In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--

(A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

Petitioner presented no evidence as to the nature or the amounts of the bills that she claims she will be unable to pay if she is not granted relief in this case. On the record before us, we find that petitioner has failed to carry her burden of establishing that the expenses claimed by petitioner (i.e., expenses for bills) qualify as basic living expenses within the meaning of section 301.6343-1(b)(4), Proced. & Admin. Regs. Assuming arguendo that the bills claimed by petitioner qualify as basic living expenses under that section, on the instant record, we find that petitioner has failed to carry her burden of establishing that the amounts of her claimed bills are reasonable. Assuming arguendo that the amount of the bills claimed by petitioner qualify as a reasonable amount for basic living expenses, we have found that Mr. Monsour, and not petitioner, signed the checks to pay at least certain of the bills relating to the residence of petitioner and Mr. Monsour.[44] On the record before us, we find that petitioner has failed to carry her burden of establishing that she will suffer an economic hardship if the Court were to deny her relief under section 6015(f). On that record, we further

_____

[44]Mr. Monsour also signed checks with respect to Mr. Monsour's investments as well as checks with respect to the joint investments of petitioner and Mr. Monsour.

find that petitioner has failed to carry her burden of establishing that the economic hardship positive factor set forth in section 4.03(1)(b) of Revenue Procedure 2000-15 is present in this case.

With respect to the abuse positive factor set forth in section 4.03(1)(c) of Revenue Procedure 2000-15, petitioner does not dispute that that positive factor is not present in this case.

With respect to the knowledge or reason to know positive factor set forth in section 4.03(1)(d) of Revenue Procedure 2000-15, petitioner makes no argument that that positive factor is present with respect to the taxable year 1990. On the record before us, we find that petitioner has failed to carry her burden of establishing that she did not know, and had no reason to know, that the liability reported in the original 1990 joint return would not be paid.

As for each of the taxable years 1989, 1991, 1992, and 1993, petitioner argues that the knowledge or reason to know positive factor is present with respect to each such year. The parties do not dispute that the types of facts and circumstances that the Court should consider in determining whether a requesting spouse has established that the knowledge or reason to know positive factor is present are the same types of facts and circumstances that the Court has considered in determining whether a requesting spouse has satisfied section 6015(b)(1)(C). Indeed, in holding

that a requesting spouse did not satisfy section 6015(f), the Court has relied on, inter alia, its findings that such spouse did not satisfy section 6015(b)(1)(C).  See, e.g., <u>Butler v. Commissioner</u>, 114 T.C. at 284-286, 292.[45]

The determinations about which we are aware[46] that respondent made in the notice for the taxable years at issue relate to the joint bank accounts of petitioner and Mr. Monsour, petitioner's separate bank account, petitioner's law practice bank account, Monsour Medical Center, Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, the Three Crowns Hotel Back Court, American Supply, and MFS Lifetime.  As discussed above, the record does not establish, inter alia, (1) the taxable year or years (i.e., 1989, 1991, 1992, and/or 1993) to which each of the determinations about which we are aware pertains and (2) the portion, if any, of the understatement for each of those years that is attributable to each such determination.[47]  On the

---

[45]See also <u>Bartak v. Commissioner</u>, T.C. Memo. 2004-83; <u>Doyel v. Commissioner</u>, T.C. Memo. 2004-35.

[46]See <u>supra</u> notes 9 through 12 and 18.

[47]Nor does the record establish the nature of the determinations (i.e., omitted income or erroneous deductions) that respondent made in the notice for the taxable years at issue for one or more of the taxable years 1989, 1991, 1992, and 1993 with respect to American Supply and MFS Lifetime.  MFS Lifetime, in which Mr. Monsour invested, was a mutual fund.  It thus appears that any determination by respondent relating to MFS Lifetime might have been a determination of omitted income.  However, petitioner has failed to establish, and the record does not provide a basis for
(continued...)

record before us, we are unable to find whether or not each of respondent's determinations about which we are aware gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993.

Assuming arguendo that each of respondent's determinations about which we are aware had given rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993, we turn first to the determinations of omitted income relating to the joint bank accounts of petitioner and Mr. Monsour, petitioner's separate bank account, petitioner's law practice bank account, and Monsour Medical Center. Petitioner concedes that she was aware of the omitted income with respect to her law practice bank account. However, she argues that she did not know, and had no reason to know, of the other items of omitted income. On the record before us, we reject that argument. As for the determinations of omitted income relating to the joint bank accounts of petitioner and Mr. Monsour and petitioner's separate bank account, petitioner does not dispute that the record estab-lishes: (1) Petitioner's name was on each of those accounts; (2) respondent made determinations of omitted income with respect to each such account; and (3) no other facts relevant to such omitted income. On the record before us, we find that petitioner

---

[47](...continued) us to find, that any determination by respondent relating to MFS Lifetime was a determination of omitted income.

has failed to establish that she did not know, and had no reason to know, of the transactions relating to the joint bank accounts of petitioner and Mr. Monsour, petitioner's separate bank account, and petitioner's law practice bank account that we assume arguendo gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993.

As for any determination by respondent of omitted income with respect to Monsour Medical Center, petitioner does not dispute that the record establishes: (1) Respondent made a determination of omitted income in one or more of the taxable years 1989, 1991, 1992, and 1993 with respect to Monsour Medical Center; (2) Mr. Teitelbaum, legal counsel for Monsour Medical Center, sent to petitioner a copy of his response to the subpoena that respondent served on Monsour Medical Center in the case for the taxable years at issue in order to determine whether there was any omitted income with respect to that entity; and (3) no other facts relevant to such omitted income. On the record before us, we find that petitioner has failed to establish that she did not know, and had no reason to know, of any transaction relating to Monsour Medical Center that we assume arguendo gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993.

We turn now to the determinations of erroneous deductions relating to Laurel Valley Farms, the Three Crowns Hotel, Azure

Tides, Inc., Georgetown Square, and the Three Crowns Hotel Back Court that we assume arguendo gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993. We note initially that petitioner contends inconsistently (1) that she did not know, and had no reason to know, about Mr. Monsour's investments and (2) that she knew about Mr. Monsour's investments. We reject petitioner's claim that she did not know, and had no reason to know, about Mr. Monsour's investments. Petitioner does not contend, and the record does not establish, that Mr. Monsour was evasive and deceitful with her concerning Mr. Monsour's investments or the joint investments of petitioner and Mr. Monsour. Before their marriage on July 3, 1983, petitioner and Mr. Monsour entered into a prenuptial agreement which listed all of Mr. Monsour's assets. At all relevant times, petitioner reviewed and mailed the checks that Mr. Monsour signed with respect to Mr. Monsour's investments as well as checks with respect to the joint investments of petitioner and Mr. Monsour. Moreover, at all relevant times, including throughout the taxable years at issue, petitioner knew about Mr. Monsour's monthly trips to check on his Florida investments, and sometimes she traveled with him on those trips. At a time not disclosed by the record after 1986, petitioner questioned Mr. Monsour about whether Mr. Monsour's Florida investments were worthwhile, to which he responded that they were. In addition, in signing each

of the joint returns for 1989, 1991, 1992, and 1993, petitioner, who received three degrees, including a law degree, from the University of Pittsburgh, was aware, inter alia, (1) that such returns claimed substantial losses in Schedules C ranging from $24,275 to $187,336 and in Schedules E ranging from $58,533 to $334,910,[48] (2) that such claimed losses reduced income reported in such returns, and (3) that there were (a) no tax shown due in the 1989 joint return or the 1991 joint return, (b) tax shown due of $1,255 in the 1992 joint return, and (c) tax shown due of $274 in the 1993 joint return.  Moreover, in signing each of the joint returns for the taxable years 1989, 1991, 1992, and 1993, petitioner did not raise any questions with Mr. Monsour or Mr. Iezzi, the preparer of those returns, regarding any of them.[49]

---

[48]Most of the losses claimed in Schedules C and in Schedules E of the 1989 joint return, the 1991 joint return, the 1992 joint return, and the 1993 joint return were with respect to Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, and the Three Crowns Hotel Back Court.

[49]Petitioner knew of the risk of an IRS challenge with respect to at least the Three Crowns Hotel and the Three Crowns Hotel Back Court.  That is because (1) in the notice for the taxable years 1987 and 1988 respondent made determinations to disallow deductions of $126,632 and $136,641 for 1987 and 1988, respectively, with respect to the Three Crowns Hotel and (2) before respondent issued that notice petitioner and Mr. Monsour agreed to respondent's proposed determinations to increase their income by $10,681 and $3,171 for 1987 and 1988, respectively, with respect to the Three Crowns Hotel Back Court. In addition, we presume that petitioner knew of the risk of an IRS challenge with respect to certain losses that petitioner and Mr. Monsour claimed in their joint returns for 1987 and 1988 with respect to certain partnerships and S corporations.  That is

(continued...)

On the record before us, we find that petitioner has failed to establish that she did not know, and had no reason to know, of the transactions relating to Laurel Valley Farms, the Three Crowns Hotel, Azure Tides, Inc., Georgetown Square, and the Three Crowns Hotel Back Court that we assume arguendo gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993. See Jonson v. Commissioner, 118 T.C. at 115-116; Bokum v. Commissioner, 94 T.C. 126, 150-151 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). On that record, we further find that petitioner has failed to establish that a reasonably prudent taxpayer in her position at the time she signed each of the joint returns for the taxable years 1989, 1991, 1992, and 1993 could not have been expected to know that each of those returns contained an understatement of tax or that further investigation was warranted. See Hayman v. Commissioner, 992 F.2d 1256, 1261-1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Price v. Commissioner, 887 F.2d 959, 965-966 (9th Cir. 1989), revg. an Oral Opinion of this Court; Mora v. Commissioner, 117 T.C. 279, 289 (2001).[50]

---

[49](...continued)
because before respondent issued the notice for the taxable years 1987 and 1988 petitioner and Mr. Monsour agreed to respondent's proposed determinations to disallow such losses.

[50]There is no published authority of the U.S. Court of Appeals for the Third Circuit, the Court of Appeals to which an appeal in this case would normally lie, setting forth that
(continued...)

On the record before us, we find that petitioner has failed to carry her burden of establishing that the knowledge or reason to know positive factor set forth in section 4.03(1)(d) of Revenue Procedure 2000-15 is present in this case.

With respect to the legal obligation positive factor set forth in section 4.03(1)(e) of Revenue Procedure 2000-15, petitioner and Mr. Monsour were married at all relevant times.  On the record before us, we find that the legal obligation factor is a neutral factor in this case.

With respect to the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15, petitioner contends that that positive factor is present in this case.  In order for that factor to be present, petitioner must establish that the liability for each of the taxable years at issue for which she seeks relief is solely attributable to Mr. Monsour.  We have found that petitioner has failed to carry her burden of establishing under section 6015(b)(1)(B) that there is an under-

---

[50](...continued)
Court's view as to whether the approach with respect to knowledge or reason to know of erroneous deductions in Bokum v. Commissioner, 94 T.C. 126, 150-151 (1990), affd. 992 F.2d 1132 (11th Cir. 1993), or in Price v. Commissioner, 887 F.2d 959, 965-966 (9th Cir. 1989), revg. an Oral Opinion of this Court, is the correct approach.  In the instant case, petitioner has failed to establish that the knowledge or reason to know positive factor is present in this case under either the approach in Bokum or the approach in Price with respect to each of the erroneous deductions in question that we assume arguendo gave rise to a portion or all of an understatement for one or more of the taxable years 1989, 1991, 1992, and 1993.

statement of tax for any of the taxable years 1989, 1991, 1992, and 1993 that is attributable to erroneous items of Mr. Monsour. On the record before us, we find for the reasons set forth in our consideration of petitioner's position with respect to section 6015(b)(1)(B) that petitioner has failed to carry her burden of establishing that the liability for each of the taxable years 1989, 1991, 1992, and 1993 for which she seeks relief is solely attributable to Mr. Monsour. As for the taxable year 1990, on the record before us, we find for similar reasons that petitioner has failed to carry her burden of establishing that the liability for that year for which she seeks relief is solely attributable to Mr. Monsour.

On the record before us, we find that petitioner has failed to carry her burden of establishing that the attribution positive factor set forth in section 4.03(1)(f) of Revenue Procedure 2000-15 is present in this case.

Turning to the negative factors weighing against granting relief under section 6015(f) set forth in section 4.03(2) of Revenue Procedure 2000-15, those factors are:

> (a) <u>Attributable to the requesting spouse</u>. The unpaid liability or item giving rise to the deficiency is attributable to the requesting spouse.

> (b) <u>Knowledge, or reason to know</u>. A requesting spouse knew or had reason to know of the item giving rise to a deficiency or that the reported liability would be unpaid at the time the return was signed. This is an extremely strong factor weighing against relief. Nonetheless, when the factors in favor of equitable

relief are unusually strong, it may be appropriate to grant relief under § 6015(f) in limited situations where a requesting spouse knew or had reason to know that the liability would not be paid, and in very limited situations where the requesting spouse knew or had reason to know of an item giving rise to a deficiency.

(c) <u>Significant benefit</u>. The requesting spouse has significantly benefitted (beyond normal support) from the unpaid liability or items giving rise to the deficiency. <u>See</u> § 1.6013-5(b).

(d) <u>Lack of economic hardship</u>. The requesting spouse will not experience economic hardship (within the meaning of section 4.02(1)(c) of this revenue procedure) if relief from the liability is not granted.

(e) <u>Noncompliance with federal income tax laws</u>. The requesting spouse has not made a good faith effort to comply with federal income tax laws in the tax years following the tax year or years to which the request for relief relates.

(f) <u>Requesting spouse's legal obligation</u>. <u>The requesting spouse</u> has a legal obligation pursuant to a divorce decree or agreement to pay the liability.

(We shall hereinafter refer to the negative factors set forth in section 4.03(2)(a), (b), (c), (d), (e), and (f) of Revenue Procedure 2000-15 as the attribution negative factor, the knowledge or reason to know negative factor, the significant benefit negative factor, the economic hardship negative factor, the noncompliance negative factor, and the legal obligation negative factor, respectively.)

The parties do not dispute that the knowledge or reason to know negative factor, the economic hardship negative factor, and the legal obligation negative factor set forth in section 4.03(2)(b), (d), and (f), respectively, of Revenue Procedure

2000-15 are the opposites of the knowledge or reason to know positive factor, the economic hardship positive factor, and the legal obligation positive factor set forth in section 4.03(1)(d), (b), and (e), respectively, of that revenue procedure. Nor do the parties dispute that the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15 is essentially the opposite of the attribution positive factor set forth in section 4.03(1)(f) of that revenue procedure.[51]

We have found that petitioner has failed to carry her burden of establishing that the economic hardship positive factor and the knowledge or reason to know positive factor set forth in section 4.03(1)(b) and (d), respectively, of Revenue Procedure 2000-15 are present in this case. On the record before us, we find that petitioner has failed to carry her burden of establishing that the economic hardship negative factor and the knowledge or reason to know negative factor set forth in section 4.03(2)(d) and (b), respectively, of that revenue procedure are not present in this case.

With respect to the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15, we have found that petitioner has failed to carry her burden of establishing

---

[51]We do not believe that those two factors are exactly opposite because the attribution negative factor does not contain the word "solely" that appears in the attribution positive factor.

that the attribution positive factor set forth in section 4.03(1)(f) of that revenue procedure is present in this case. On the record before us, we find for the reasons set forth in our consideration of the attribution positive factor that petitioner has failed to carry her burden of establishing (1) that no item giving rise to a portion or all of the understatement for each of the taxable years 1989, 1991, 1992, and 1993 and (2) that no portion of the unpaid liability for 1990 are attributable to herself. On the record before us, we find that petitioner has failed to carry her burden of establishing that the attribution negative factor set forth in section 4.03(2)(a) of Revenue Procedure 2000-15 is not present in this case.

With respect to the significant benefit negative factor set forth in section 4.03(2)(c) of Revenue Procedure 2000-15, petitioner makes no argument that that negative factor is not present with respect to the taxable year 1990. On the record before us, we find that petitioner has failed to carry her burden of establishing that she did not significantly benefit beyond normal support from the unpaid liability with respect to the taxable year 1990.

As for each of the taxable years 1989, 1991, 1992, and 1993, petitioner argues that

> While it may be arguable that the Petitioner benefited by the reduced taxes and/or omitted income, those arguments appear to be without merit * * * [based on] Petitioner's own testimony which stated that her lifestyle

remained unchanged or got worse during the years at issue.

Respondent argues that

The erroneous deductions giving rise to the deficiencies and the 1990 unpaid liability provided both of the Monsours with significantly more disposable income than they otherwise would have had.

Normal support is not a significant benefit. Flynn v. Commissioner, 93 T.C. 355, 367 (1989). Normal support is measured by the circumstances of the parties. Id. In order to determine whether the requesting spouse significantly benefited from the items giving rise to the deficiency, we consider whether the requesting spouse and the nonrequesting spouse were able to make expenditures in the taxable years in question that they otherwise would not have been able to make. See Alt v. Commissioner, 119 T.C. at 314; Jonson v. Commissioner, 118 T.C. at 119-120.

We have found that from the time of their marriage on July 3, 1983, until 1986, petitioner and Mr. Monsour did not worry about money and did not scrutinize their discretionary spending to any significant extent. In 1986, Mr. Monsour began to experience tax problems when Congress enacted certain provisions into the Code that in general eliminated the favorable tax treatment that the Code had previously permitted with respect to at least certain of Mr. Monsour's Florida investments. As a result of, inter alia, those tax problems, petitioner and Mr. Monsour began to scrutinize their discretionary spending much more than they had in the past.

Nonetheless, on the record before us, we find that petitioner has failed to establish the amount that she and Mr. Monsour expended annually for their normal support before, during, and after the taxable years at issue. On that record, we further find that petitioner has failed to carry her burden of persuading us that she did not significantly benefit beyond normal support from the items giving rise to the deficiency with respect to each of the taxable years 1989, 1991, 1992, and 1993.

On the record before us, we find that petitioner has failed to carry her burden of establishing that the significant benefit negative factor set forth in section 4.03(2)(c) of Revenue Procedure 2000-15 is not present in this case.

With respect to the noncompliance negative factor set forth in section 4.03(2)(e) of Revenue Procedure 2000-15, petitioner contends that she "has followed all of the tax laws in the years since 1993." We have found that at the time of the trial in this case in September 2003 petitioner and Mr. Monsour had an unpaid liability of $60,000 with respect to their 1998 joint return. On the record before us, we find that petitioner has failed to carry her burden of establishing that the noncompliance negative factor set forth in section 4.03(2)(e) of Revenue Procedure 2000-15 is not present in this case.

With respect to the legal obligation negative factor set forth in section 4.03(2)(f) of Revenue Procedure 2000-15, we have

found that the legal obligation positive factor set forth in section 4.03(1)(e) of Revenue Procedure 2000-15 is a neutral factor in this case.  On the record before us, we find that the legal obligation negative factor set forth in section 4.03(2)(f) of that revenue procedure is a neutral factor in this case.

On the record before us, we find that petitioner has failed to carry her burden of establishing any other factors with respect to the taxable years at issue that are not set forth in Revenue Procedure 2000-15 and that weigh in favor of granting her relief under section 6015(f).

Based upon our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that respondent abused respondent's discretion in denying her relief under section 6015(f) with respect to any of the taxable years at issue.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.